No. 12,568.

Huffman *v*. Smith.
(286 Pac. 861)

Decided April 7, 1930.

Messrs. Coen & Sauter, for plaintiff in error.

Messrs. Webster, West & Drath, for defendant in error.

*In Department.*

Mr. Justice Adams delivered the opinion of the court.

Emma J. Smith was plaintiff and Minnie I. Huffman defendant in the trial court. They will be referred to as there aligned.

Plaintiff obtained a decree in this cause, numbered 5456 in the district court of Logan county, quieting title in her to the NE¼ and SW¼, section 35, township 12 north, range 48 west, situate in that county. Defendant brings the case here on error and asks for a supersedeas.

Plaintiff alleges as the basis of her right that she is the owner in fee simple and "in the actual possession of the above described lands, under claim and color of title, made in good faith, and has for seven successive years, through herself and her predecessor in interest [John L. Birkby] continued in such possession and paid all taxes legally assessed on such lands during said time." In opposition, defendant claims that she is the owner of an undivided one-half interest and entitled to the possession thereof.

Each party deraigns her respective title or claim from a common original source. The undisputed starting point is on or about April 24, 1913, at which time the ownership of the above 320 acres was vested in the defendant

Mrs. Huffman and one W. A. Gordon. From then on, the following warranty deeds appear of record in the office of the county clerk and recorder of Logan county: Deed dated December 2, 1915, recorded December 9, 1915, from Minnie I. Huffman to M. O. Wolcott, undivided one-half interest. Deed, March 6, 1917, recorded March 20, 1917, Wolcott to Henry Z. Whitney, undivided one-half interest. Deed, March 7, 1917, recorded January 21, 1918, Whitney to O. A. Gordon, undivided one-half interest. Deed, March 20, 1918, recorded March 27, 1918, W. A. Gordon and Orlie A. (O. A.) Gordon to John L. Birkby, entire interest. Deed, dated and recorded April 21, 1925, Birkby to Emma J. Smith, the defendant in error, entire interest.

Other instruments of public record in Logan county between the months of April, 1918, and November, 1923, consist of six mortgages or deeds of trust, executed by Birkby at various times, to secure notes given by him. Plaintiff introduced them in evidence only to show Birkby's recognized acts of ownership and good faith while the land stood in his name and while it remained in his possession.

The only other instruments of public record in Logan county necessary to be mentioned here are two notices of lis pendens, on which the defendant relies. The first one was filed in the office of the county clerk and recorder of that county in April, 1917, and the second one was there filed on May 7, 1917. They appertain to the same suit; the second notice is a repetition of the first, and we shall consider them as one. They gave notice of the pendency of an action commenced in the district court of Logan county on May 7, 1917, in cause numbered 2614, entitled, "The W. L. Huffman Automobile Co., Wm. L. Huffman and Minnie I. Huffman, Plaintiffs v. Melville O. Wolcott, Nora Catherine Wolcott, Joseph P. O'Keefe, Henry Z. Whitney and W. A. Gordon, Defendants." Minnie I. Huffman, one of the plaintiffs in cause No. 2614, is the principal defendant in the present action, No. 5456, in the

district court. The purpose of the suit in No. 2614, among other things, was to have Mrs. Huffman's warranty deed which was delivered by her in December, 1915, to M. O. Wolcott, declared to be a mortgage, also to show that the mortgage debt was paid, and also to obtain a reconveyance of the above described land to her. Her notice of lis pendens correctly described the above land, but confined itself to the undivided one-half interest theretofore conveyed by her to Wolcott. The notice stated the object of the suit and gave the names of the above parties, except that of W. A. Gordon, whose name did not appear in either notice of lis pendens. The suit also referred to the improvements on other land, the S½, section 35, township 11 north, range 48 west, which seems to have led to a mistake in the decree, to which we shall now refer.

In December, 1917, a final decree was entered in cause No. 2614, wherein it was ordered, inter alia, that the defendant Wolcott should execute a warranty deed to Minnie I. Huffman, conveying an undivided one-half interest in the *S½, section 35, township 11 north, range 48 west,* and also a bill of sale to W. L. Huffman, one of her coplaintiffs, for one-half of the improvements and equipment thereon, upon the payment by plaintiffs to Wolcott of the sum of $598.53. August 14, 1923, a decree nunc pro tunc was entered, substantially the same as in the original, except to correct the description of the land to be conveyed to Mrs. Huffman to read, the SW¼ and NE¼, section 35, township 12 north, range 48 west, the property here involved. Wolcott has not reconveyed any property or interest therein to Mrs. Huffman. It appears that a copy of the decree in No. 2614 was filed in the office of the county clerk and recorder for the first time, after it had been corrected in the year 1923.

We revert to the status of Birkby, the immediate grantor of plaintiff, Mrs. Smith, in the present cause. He acquired the SW¼ and NE¼, section 35, township 12 north, range 48 west, in a deal with the two Gordons for

the exchange of real estate. They deeded this property to Birkby with other lands, and he deeded to them certain lands in the state of Iowa, and paid part of the consideration in cash. The evidence also shows that Birkby thereafter made a bona fide deed to plaintiff for value received. About the time that Birkby got the land, or within a few days thereafter, he sought advice from H. E. Munson, then a practicing attorney in Logan county, concerning the title. Judge Munson examined it and told Birkby that it was all right. They both testified to this effect.

Birkby paid the taxes regularly and continuously on the above 320 acres in section 12 for the years 1918 to 1924, both inclusive, and plaintiff so paid them for the years 1925, 1926 and 1927. The first of the above payments was made on February 19, 1919, and the last on July 30, 1928. They are all evidenced by tax receipts. This suit was commenced in February, 1929. Other facts are stated in the opinion.

1. Plaintiff bases her claim on section 37, chapter 150, page 602, Session Laws 1927, which is identical with and a repetition of section 6423, Compiled Laws 1921. It reads as follows:

"Every person in the actual possession of lands or tenements, under claim and color of title, made in good faith, and who shall, for seven successive years, continue in such possession, and shall also, during said time, pay all taxes legally assessed on such lands or tenements, shall be held and adjudged to be the legal owner of said lands or tenements, to the extent and according to the purport of his or her paper title. All persons holding under such possession by purchase, devise or descent, before said seven years shall have expired, and who shall continue such possession and continue to pay the taxes as aforesaid, so as to complete the possession and payment of taxes for the term aforesaid, shall be entitled to the benefit of this section."

Plaintiff claims the benefit of the above section by vir-

tue of compliance therewith on the part of herself and Birkby, from whom she purchased. The statutory requisites to be considered are: (a) Actual possession; (b) under claim and color of title; (c) made in good faith; (d) continuance in such possession for seven successive years; and (e) that during said time they shall have paid all taxes legally assessed.

2. A study of this case convinces us that plaintiff might have well relied on her title to the full interest in the land involved, superior to defendant's claim to one-half interest therein, regardless of the "seven year" statute. However, plaintiff's counsel, apparently out of an abundance of precaution, saw fit to bring this suit under plaintiff's equally tenable rights by virtue of the statute. Having done so, and this cause having been so tried and argued, we shall determine it accordingly. We do not necessarily limit our reasoning to that of counsel.

3. Compliance with the statute by plaintiff and Birkby covers a period of nearly eleven years before this suit was commenced in February, 1929. As to their actual possession under claim and color of title, it began in March, 1918, and has continued ever since. They paid taxes regularly for ten years on the dates appearing in our statement of facts. These things speak for themselves.

4. Further, as to color of title: Laying aside for the moment the notice of lis pendens, and considering only the other instruments of public record, they show that the title in and to the entire interest in the land involved is vested in plaintiff in fee simple, by valid mesne conveyances.

Defendant stresses the notice of lis pendens in cause No. 2614, and claims a right thereunder. At the time cause No. 2614 was brought, the record title stood in the name of W. A. Gordon and Henry Z. Whitney. We shall trace each one-half interest separately. The notice of lis pendens was not directed against the W. A. Gordon interest. It was expressly directed against the other un-

divided one-half, namely, the part that came originally from Mrs. Huffman, thence to Wolcott, and following successively to Whitney, to O. A. Gordon, to Birkby and to Mrs. Smith.

The suit of Mrs. Huffman and others in cause No. 2614 to recover the latter undivided one-half interest, resulted in a final decree for *Wolcott* to convey it to her, conditioned on payment of the sum of $598.53 to Wolcott. This order came too late, however, because Wolcott had conveyed that interest in the land to Whitney, not pendente lite, but by deed of record before the suit was brought or notice of lis pendens was filed. No payment was directed to be made to Whitney, although he was the ostensible owner of an undivided one-half interest. Furthermore, there were no findings of any kind either general or special against Whitney in that suit, nor was there any decree whatever against him or his grantees. It does not appear that he was even served with process, and it is not clear that he appeared in the action, either personally or by attorney. And even if he had so appeared, he might well be satisfied with the outcome of a suit that ended with no judgment against him or his grantees. It is evident that none was intended. It is clear that, as far as the original Huffman undivided one-half interest is concerned, the notice of lis pendens was wholly ineffectual to cover it, even though such notice conveyed warning of the judgment, since it happened that the suit terminated in a final judgment which was as nothing concerning that interest.

█ 5. We come now to the W. A. Gordon undivided one-half interest. As nearly as we can make out from the record, it seems now that at or about the time cause No. 2614 got under way, counsel for plaintiffs (including Mrs. Huffman) in that suit decided to shift their objective from the original Huffman undivided one-half interest, and to recoup by obtaining title in her to the W. A. Gordon like share. Whether this was to obviate the difficulties imminent by reason of a then outstanding mortgage

to O'Keefe, one of the defendants in No. 2614, or because of the deed to Whitney, or what not, we are at a loss to say. However, it may be conceded that plaintiffs' complaint in that action may have been sufficient for the purpose of embracing the W. A. Gordon interest, but the notice of lis pendens was not. There was a distinct line of demarcation in such notice, and confinement therein to the original Huffman undivided interest. The notice remained unchanged, and it was not consistent in any way with the theory of a suit against Gordon or his undivided share of the property. The notice makes no reference to him, does not describe his interest, or state that any relief is asked against him. The notice was such as not to convey the slightest intimation to the most careful title examiner that there was the remotest intention to affect the W. A. Gordon interest. That interest never was a link in the chain of title on the public records covering the Huffman interest, as far as here disclosed. From these facts it follows that such notice of lis pendens could be safely disregarded as to the W. A. Gordon interest, and that it was void as against persons without actual notice, claiming title under or through Gordon. See section 38, Code of Civil Procedure as to requirements of notice of lis pendens. If there is need of confirmation that the W. A. Gordon interest was not affected by that suit, it will be found in the decree itself, which does not direct any conveyance from Gordon, or place any restriction upon the alienation of his interest in the property involved.

6. To summarize the cause in No. 2614, it did not touch the W. A. Gordon interest or the Whitney interest, although the entire interest in and to the property in question was vested in them when the suit was brought. All that the plaintiffs in No. 2614 obtained, at least as far as third parties are concerned, was an order for a deed from Wolcott, then a stranger to the title. From aught that appears of record, a deed from any passing tourist would have done as well to vest title in defendant, cover-

ing either undivided one-half interest in the land. Our conclusion is that the entire interest is vested in plaintiff and the defendant has nothing. The decree in No. 2614, corrected nunc pro tunc in 1923, changed the land description, but did not purport to do more than this. We do not attempt to say what the judgment here would be if the notice of lis pendens in cause No. 2614 had disclosed an attack on the W. A. Gordon interest, followed by a decree that it be conveyed to defendant. And if that suit, brought to obtain an accounting and to reinvest Mrs. Huffman with her own original undivided share, had been prosecuted to a successful conclusion against Whitney, the result might also be different. Of course, we do not undertake here to determine the rights of the parties in cause No. 2614, except in their supposed relation to the present matter.

If any rational explanation of the strange decree in 2614 can be offered, it has not been forthcoming, except as we have attempted to analyze it. It is certain, though, that such decree was not violated in any way by any deed included in plaintiff's chain of title to the full interest in the land involved. For the purpose of a suit like this, color of title is enough, if other requirements of the statute be complied with, and the proof shows it to be ample.

7. Good faith. This was shown in many ways. Among such acts were the following: Birkby acquired the property involved, with other lands, in a bona fide land deal, estimated to involve $40,500. The deal was consummated in Omaha, Nebraska, and he took a bond to guarantee the title. Thereafter he procured an opinion on the title by a Colorado attorney of high standing. Birkby afterwards executed not less than six mortgages or deeds of trust covering the entire interest, which were accepted as security for various loans. He made a valid conveyance to Mrs. Smith, and either he or she faithfully paid the taxes, occupied the lands continuously and made expenditures and improvements. Tenants on the land attorned to them. If there is anything that plaintiff or her grantor

Birkby failed to do to show their good faith, or that shows bad faith, it is absent from the record.

■ 8. Counsel for defendant challenges Birkby's good faith, because of the fact that about two or three years after he bought, a farmer told him that defendant owned an undivided one-half interest. Birkby replied that this could not be, because his attorney had passed on the title. The owner was not obliged to pursue such a vague rumor, after he had bought in good faith and had his title examined. Birkby had never heard of Mrs. Huffman before. If he had followed up the rumor, he would have discovered, as we have found, that the attorney was right and the farmer in the wrong.

9. Counsel for defendant complain that it does not appear how much of the title Birkby's attorney examined, nor how he arrived at his conclusions. Birkby and Judge Munson, who was a practicing attorney representing Birkby in the year 1918, both testified that Judge Munson examined the title, that he pronounced it good, and neither of them was asked "how much" of it was examined. It would be strange if any competent lawyer would give his opinion without fully examining the title. He gave sound advice, and his mental processes are immaterial. There was no error in the admission or rejection of evidence.

10. Counsel for defendant enter into a discussion of estates in common, but the subject is foreign to the facts of this case. They speak for themselves and to repeat them would be an imposition. Plaintiff and defendant have nothing in common and never have had. Plaintiff's interest is not shared with anyone, nor entitled to be. Hers is an estate in severalty. No authorities cited concerning tenants in common bear on the case at bar.

11. Plaintiff has fully established her compliance in overflowing measure with all of the provisions of section 37, chapter 150, Session Laws 1927. It entitles her to the benefit of the statute, in that she be held and adjudged to be the owner of the entire interest in the lands involved,

to the extent of her paper title, which in this case is an estate in fee simple.

Judgment affirmed.

MR. CHIEF JUSTICE WHITFORD, MR. JUSTICE CAMPBELL and MR. JUSTICE MOORE concur.